**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **BROOKS & BAKER, L.L.C.,** | |
| **Plaintiff** | |
| **vs.** | **NO.   2:10-cv-00146** |
| **FLAMBEAU, INC., ET AL.,** | |
| **Defendant.** | |

## DEFENDANTS' MOTION TO TRANSFER

Defendants, Flambeau, Inc., Nordic Group of Companies, Ltd., William R. Sauey, and Jason C. Sauey (collectively "Defendants"), by their attorneys, Quarles & Brady LLP, hereby move to transfer venue of this case.

### ISSUES

I.  If the Court does not dismiss the Complaint, should venue of this case be transferred to the Western District of Wisconsin?  **Defendants' answer: Yes.**

II.  In the alternative, if the Court does not dismiss the Complaint or transfer the action to the Western District of Wisconsin, should venue of this case be transferred to the Northern District of Ohio?  **Defendants' answer: Yes.**

### INTRODUCTION AND SUMMARY OF ARGUMENT

Brooks & Baker, LLC ("Brooks & Baker") has filed an action against Defendants that has no substantial connection to the Eastern District of Texas and does not belong in this district. If it does not grant Defendants' separately-filed motion to dismiss Plaintiffs' Complaint, the Court therefore should transfer venue of this case to the Western District of Wisconsin.  In the alternative, it should transfer venue to the Northern District of Ohio.  The Western District of

Wisconsin and the Northern District of Ohio each is clearly a more convenient and appropriate forum for this case.

FACTS

## I.    <u>THE PARTIES</u>

Flambeau, Inc. ("Flambeau") is a Wisconsin corporation with its principal place of business in Middlefield, Ohio.  (Declaration of Jeff Bush dated September 23, 2010 ("Bush Decl."), ¶3.)  Flambeau's high-level officers are predominately located in Middlefield, Ohio, although Flambeau also has some executive offices in Baraboo, Wisconsin.  (*Id.*)  Flambeau has manufacturing facilities in Wisconsin, Indiana, Georgia, Ohio, California, North Carolina, England, and Mexico.  (*Id.*, ¶4.)  Flambeau has no corporate offices, no registered agent, and no manufacturing facilities in Texas.  (*Id.*)

Nordic Group of Companies, Ltd. ("Nordic") is a Wisconsin corporation with its principal place of business in Baraboo, Wisconsin.  (Dkt. #1, Complaint, ¶4; Bush Decl., ¶16.) Nordic has no corporate offices, no registered agent, and no business presence of any kind in Texas.  (Bush Decl., ¶16.)

William Sauey is the chairman of Nordic's board, the founder and former President of Flambeau, and the registered agent of both corporations.  (Dkt. #1, Complaint, ¶¶3-4, 6-7.)  He conducts business in Wisconsin.  (*Id.*, ¶6.)  Jason Sauey is a director and officer of both Nordic and Flambeau.  (*Id.*, ¶¶8-9.)  He conducts business in Wisconsin, as well as in Ohio.  (*Id.*, ¶8; Bush Decl., ¶3.)

Brooks & Baker is a Delaware corporation with its principal place of business in Pfafftown, North Carolina.  (Dkt. #1, Complaint, ¶2.)

## II.   THE LICENSE AGREEMENT BETWEEN FLAMBEAU AND BROOKS & BAKER

Flambeau and Brooks & Baker entered into an exclusive license agreement on April 12, 2004.  (Dkt. #1-2, Complaint, Exh. B; Bush Dec., ¶6.)  The agreement later was superseded and replaced by a new license agreement dated October 27, 2004 (the "License Agreement").  (Dkt. #2 & 2-1, Complaint, Exh. D; Bush Decl., ¶6.)  Nordic, William Sauey, and Jason Sauey were not parties to the License Agreement.  (Dkt. #2 & 2-1, Complaint, Exh. D.)

The License Agreement granted Flambeau an exclusive five-year right to sell lighted fishing, utility, tool, and medical storage boxes under Brooks & Baker's patents.  (Dkt. #2, Complaint, Exh. D, §§ 1, 3(a), & 6; Bush Decl., ¶7.)  It also granted Flambeau the right to use Brooks & Baker's trademarks in marketing the boxes.  (Dkt. #2, Complaint, Exh. D, § 4(a); Bush Decl., ¶7.)  The License Agreement covered all Brooks & Baker patents.  (Dkt. #2, Complaint, Exh. D, at § 1; Bush Decl., ¶7.)  It has a choice-of-law provision stating that it is governed by the law of Wisconsin.  (Dkt. #2-1, Complaint, Exh. D, § 24.)

Jeff Bush, the Senior Vice President in Flambeau's Retail Markets Group, was the principal person on Flambeau's end involved in Flambeau's License Agreement with Brooks & Baker and with decisions relating to the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement.  (Bush Decl., ¶8.)  Mr. Bush signed the License Agreement as a representative of Flambeau.  (Dkt. #2-1, Complaint, Exh. D, at 5; Bush Decl., ¶6.)  He also responded to important correspondence from Brooks & Baker even though Brooks & Baker directed the correspondence to William Sauey and Jason Sauey.  (Dkt. #2-2, Complaint, Exh. E; Dkt. #2-3, Complaint, Exh. F; Bush Decl., ¶¶12, 14.)  Mr. Bush works in Flambeau's offices in Middlefield, Ohio. (Bush Decl., ¶2.)

Robert Hammil, a Flambeau project engineer, was secondarily involved in Flambeau's License Agreement with Brooks & Baker and with decisions relating to the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement.  (Bush Decl., ¶9.)  Mr. Hammil received Brooks & Baker's initial contacts about the possibility of licensing patent rights to Flambeau.  (*Id.*, ¶5.)  Like Mr. Bush, Mr. Hammil works in Flambeau's offices in Middlefield, Ohio.  (*Id.*)

Flambeau made few shipments of the lighted boxes manufactured under the License Agreement into the State of Texas.  (*Id.*, ¶10.)  These shipments constituted less than 1% of Flambeau's total sales of the lighted boxes.  (*Id.*)

## III.   THE PRIOR LITIGATION BETWEEN FLAMBEAU AND BROOKS AND BAKER

A dispute arose concerning the License Agreement's validity and enforceability.  (*Id.*, ¶11.)  Brooks & Baker contended that Flambeau had breached the Agreement and that Brooks & Baker had validly terminated the License Agreement in response to the breach.  (Dkt. #2-2, Complaint, Exh. E; Bush Decl., ¶¶11, 13.)  Flambeau denied that it had breached the License Agreement or that Brooks & Baker had terminated it.  (Dkt. #2-3, Complaint, Exh. F.)  Flambeau also contended that it had overpaid royalties to Brooks & Baker.

To resolve this dispute, Flambeau filed a Complaint for Declaratory Judgment in an Ohio state court.  (Declaration of Josephine Benkers dated September 23, 2010 "Benkers Decl."), ¶3, Exh. A.)  Brooks & Baker answered and counterclaimed for breach of the License Agreement and patent infringement.  (*Id.*, ¶4, Exh. B.)  The Ohio court struck Brooks & Baker's counterclaim as a sanction for its discovery misconduct.  (*Id.*, ¶5, Exh. C.).

Subsequently, the Ohio state court awarded summary judgment to Flambeau.  (*Id.*, ¶6, Exh. D.)  It decreed that the License Agreement is valid and enforceable; that Flambeau

performed all its obligations under the License Agreement; that Brooks & Baker materially breached the License Agreement by marketing and attempting to sell lighted boxes to retailers in violation of Flambeau's rights during the License Agreement's term; that Flambeau had paid all royalties due to Brooks & Baker; that Brooks & Baker owed Flambeau $11,841.69 for the cost of tooling; and that Flambeau was entitled to sell any lighted boxes still remaining in its inventory. (*Id.*, ¶6, Exh. D.)  The court also awarded attorneys fees to Flambeau.  (*Id.*, ¶7, Exh. E.)

## IV.    THE PRESENT ACTION

Brooks & Baker then initiated this action.  Brooks & Baker's Complaint alleges that Flambeau breached, and that Brooks & Baker terminated, the same License Agreement that the Ohio state court held is enforceable and was breached solely by Brooks & Baker.  (Dkt. #1, Complaint, ¶¶39-47.)  The Complaint also resurrects the counterclaim that the Ohio state court struck as a discovery sanction, alleging that Flambeau infringed on the patent rights that Brooks & Baker licensed to Flambeau under the parties' valid, enforceable License Agreement.[1]  (*Id.*, ¶¶55-61.)

Brooks & Baker elected to bring this action in the Eastern District of Texas, despite the fact that none of the parties' dealings have occurred in Texas, that no party is located in or even near Texas, and that Flambeau and Brooks & Baker have previously litigated a case in the State of Ohio.

## ARGUMENT

## I.    IF IT DOES NOT DISMISS THE COMPLAINT, THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF WISCONSIN.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  There can be no dispute that Brooks & Baker could have filed this case in the Western District of Wisconsin.  Nordic and Flambeau both are Wisconsin corporations with registered agents in Wisconsin.  (Dkt. #1, Complaint, ¶¶3-4.)  William and Jason Sauey each conduct business in Baraboo, Wisconsin, and are amenable to service of process at that location. (*Id.*, ¶¶6, 8.)  In addition, Brooks & Baker actually served both Nordic and Flambeau in the State of Wisconsin.  (Benkers Decl., ¶8, Exh. F.)

Section 1404(a) "venue transfers may be granted 'upon a lesser showing of inconvenience' than *forum non conveniens* dismissals,'" and "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal."  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).  Venue should be transferred under § 1404(a) when "the transferee venue is clearly more convenient." *Id.* at 315.

A court considers private and public interest factors when ruling on a § 1404(a) motion. *Vasudevan Software v. International Bus. Mach. Corp.*, 2009 WL 3784371, *1 (E.D. Tex., Nov. 10, 2009).  The private interest factors relevant to a § 1404(a) motion are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* (citation omitted).  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of

---

[1] The Complaint's causes of action for trademark infringement, trade dress infringement, and breach of contract have all been nonsuited.  (Dkt. ##9 & 10.)

laws or in the application of foreign law." *Id.* (citation omitted).  Both the private and public interest factors demonstrate that the Western District of Wisconsin is clearly a more convenient forum for the present case.

      **A.**    **The Private Interest Factors Weigh In Favor of Transfer.**

              1.     The Western District of Wisconsin Offers Greater Ease of Access to Sources of Proof.

All documents relating to the License Agreement, or to Flambeau's design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, would be located in Flambeau's offices in Middlefield, Ohio.  (Bush Decl., ¶17.)  Middlefield, Ohio, is considerably closer to Madison, Wisconsin -- where the Western District of Wisconsin sits -- than it is to Marshall, Texas (approximately 525 miles versus approximately 1,108 miles).  Brooks & Baker is located in Pfafftown, North Carolina (Dkt. #1, Complaint, ¶2), and its documents presumably are located there as well.  Pfafftown, North Carolina is slightly closer to Madison, Wisconsin, than it is to Marshall, Texas (approximately 840 miles versus approximately 966 miles).  No documents relating to the License Agreement, or to Flambeau's design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, are located in the Eastern District of Texas.  (Bush Decl., ¶19.)

"Despite the fact that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments, this alone does not render this factor superfluous and cannot be read out of the § 1404(a) analysis." *Vasudevan Software*, 2009 WL 3784371, at *2 (citing *In re Volkswagen*, 545 F.3d at 316).  With all documents located closer to the Western District of Wisconsin than to the Eastern District of Texas, this factor favors transfer.

2.      Transfer to the Western District of Wisconsin Would Reduce the Cost for the Parties and Willing Witnesses.

The Western District of Wisconsin would clearly be more convenient for the parties and their willing witnesses than would the Eastern District of Texas.  Defendants are largely located in Baraboo, Wisconsin.  (Dkt. #1, Complaint, ¶¶4, 6, 8).  Even Flambeau, which has its principal place of business in Middlefield, Ohio, also maintains executive offices in Baraboo and is organized as a Wisconsin corporation.  (*Id.*, ¶3; Bush Decl., ¶3.)  Furthermore, Middlefield, Ohio, is considerably closer to Madison, Wisconsin, than it is to Marshall, Texas (approximately 525 miles versus approximately 1,108 miles).  Brooks & Baker's location, Pfafftown, North Carolina, is slightly closer to Madison than it is to Marshall (approximately 840 miles versus approximately 966 miles).  No party is located near the Eastern District of Texas.  No person with information about the License Agreement, or with information about the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, resides in the State of Texas  (Bush Decl., ¶18.)  Transfer to the Western District of Wisconsin thus would be immeasurably more convenient for Defendants and their willing witnesses and, if anything, slightly more convenient for Brooks & Baker as well.

**B.**    **The Public Interest Factors Weigh in Favor of Transfer.**

1.      The Western District of Wisconsin Has a Greater Localized Interest in Deciding this Controversy.

"Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case."  *Vasudevan Software*, 2009 WL 3784371, at *2 (citing *In re Volkswagen*, 545 F.3d at 318).  The Western District of Wisconsin's localized interest in this case is clear.  Nordic and Flambeau both are Wisconsin corporations.  William Sauey and Jason Sauey each conduct business in Baraboo,

Wisconsin.  (Dkt. #1, Complaint, ¶¶6, 8.)  Furthermore, the License Agreement that is central to this case is governed by Wisconsin law.  (Dkt. #2-1, Complaint, Exh. D, § 24.)

In contrast, the Eastern District of Texas has no particular interest in the outcome of this case.  None of the underlying actions in this case occurred in the Eastern District of Texas.  No party is located in the Eastern District of Texas.  Flambeau made few shipments of the lighted boxes manufactured under the License Agreement into the State of Texas, constituting less than 1% of Flambeau's total sales of the lighted boxes.  (Bush Decl., ¶10.)

2.      The Western District of Wisconsin is More Familiar with the Law that Will Govern This Case.

The Western District of Wisconsin is more familiar with Wisconsin contract law, which governs the License Agreement between Brooks & Baker and Flambeau.  Although Brooks & Baker has nonsuited its claim for breach of contract, the Complaint still rests on the central allegation that Brooks & Baker validly terminated the License Agreement based on Flambeau's breach.  (Dkt. #1, Complaint, ¶¶44-47.)  If the License Agreement remained enforceable, then Flambeau enjoyed an enforceable right to sell its lighted boxes under Brooks & Baker's patents and Brooks & Baker's claims for patent infringement and unfair competition must fail.  This case cannot be resolved except by the application of Wisconsin contract law.

Neither the Western District of Wisconsin nor the Eastern District of Texas is more familiar with the federal law governing Brooks & Baker's claims for patent infringement and false marking.  Nor is either court more familiar with the law that governs Brooks & Baker's tort claim for unfair competition.  Although Brooks & Baker attempts to plead its unfair competition claim under the law of Texas (see Dkt. #1, Complaint, ¶102), conflict-of-law principles make clear that the law of Ohio should most likely govern this claim because Defendants' allegedly tortious conduct took place in the State of Ohio.  The Texas Supreme Court has adopted

Restatement (Second) Conflict of Laws § 145 to determine which state's law governs a claim in tort. *Guitierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).  Under the Restatement, the place of injury is not a significant factor in determining which state's law applies to a claim of unfair competition because there generally is "no one clearly demonstrable place of injury."  Rest. 2d Confl. § 145 cmt. e; *see also id.* cmt. f.  Instead, "the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from . . . the misappropriation of trade values."  *Id.* cmt f; *see also id.* cmt. e ("[T]he place of business is the more important contact.")  Applying Texas law, the District Court for the Southern District of Texas thus held that the law of New Jersey governed an unfair competition claim (among other claims) that a Texas partnership brought against a Delaware corporation with its principal place of business in New Jersey.  *Tissue Transplant Tech., Ltd. v. Osteotech, Inc.*, 2005 WL 958407, *3 (W.D. Tex. Apr. 26, 2005).  The Southern District reasoned that "[w]here all or a great majority of the actions that give rise to a tortious claim took place in one state, that state's law will typically apply, *even though the effects of the activity may have been felt in Texas*."  *Id.* (emphasis added). This reasoning applies to the present case too:  Defendants' allegedly tortious activity occurred in the State of Ohio, which is where Flambeau's employees made the critical decisions relating to the License Agreement and to the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement.  (Bush Decl., ¶¶2, 5, 8-9.)  Ohio law therefore should govern the claim for unfair competition, even though the effects of Defendants' allegedly tortious activity may have been felt in Texas.

## II.   IN THE ALTERNATIVE, IF IT DOES NOT DISMISS THE COMPLAINT OR TRANSFER THE ACTION TO THE WESTERN DISTRICT OF WISCONSIN, THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF OHIO.

Brooks & Baker also could have brought this action in the Northern District of Ohio, which is also a more appropriate forum.  The action could have been brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. 1391(b)(2).  A substantial part of the events alleged in Brooks & Baker's Complaint occurred in the Northern District of Ohio.  Jeff Bush and Robert Hammil were the principal persons involved with the parties' License Agreement and with major decisions relating to the design, manufacture, and distribution of any lighted boxes pursuant to the License Agreement.  (Bush Decl., ¶¶8-9.)  Mr. Bush and Mr. Hammil both work at Flambeau's offices in Middlefield, Ohio.  (*Id.*, ¶¶2, 5.)  Flambeau also maintains a manufacturing facility in Middlefield, Ohio.  (*Id.*, ¶4.)

Both private and public interest factors demonstrate that the Northern District of Ohio, like the Western District of Wisconsin, is clearly a more convenient forum for this case than is the Eastern District of Texas.

### A.   The Private Interest Factors Weigh In Favor of Transfer.

1.   The Northern District of Ohio Offers Greater Ease of Access to Sources of Proof.

All documents relating to the License Agreement, or to Flambeau's design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, would be located in Flambeau's offices in Middlefield, Ohio.  (*Id.*, ¶17.)  As noted above, Brooks & Baker is located in Pfafftown, North Carolina (Dkt. #1, Complaint, ¶2), and its documents presumably are located there as well.  Pfafftown, North Carolina is considerably closer to Cleveland, Ohio -- where the District Court for the Northern District of Ohio sits -- than it is to Marshall, Texas

(approximately 461 miles versus approximately 966 miles).  No documents relating to the License Agreement, or to Flambeau's design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, are located in the Eastern District of Texas.  (Bush Decl., ¶19.)

"Despite the fact that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments, this alone does not render this factor superfluous and cannot be read out of the § 1404(a) analysis."  *Vasudevan Software*, 2009 WL 3784371, at *2 (citing *In re Volkswagen*, 545 F.3d at 316).  With all Defendants' documents located in the Northern District of Ohio and no documents located in the Eastern District of Texas, this factor favors transfer.

2.      The Northern District of Ohio Offers Better Availability of Compulsory Process to Secure the Attendance of Witnesses.

"[A] court's subpoena power is subject to [Fed. R. Civ. P.] 45(c)(3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse."  *Id.*, at *3. The District Court for the Northern District of Ohio sits in Cleveland, Ohio.  Middlefield, Ohio, lies within 100 miles of Cleveland.  Transfer to the Northern District of Ohio thus would make available compulsory process to secure the attendance of Flambeau's non-officer employees who are located in Flambeau's Middlefield offices, including Robert Hammil.  (Bush Decl., ¶¶3, 5.)

Conversely, denying transfer could offer no advantages in terms of making compulsory process more available.  No person with information about the License Agreement, or with information about the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, resides in the State of Texas  (*Id.*, ¶18.)  Brooks & Baker is located in Pfafftown, North Carolina (Dkt. #1, Complaint, ¶2) -- approximately 966 miles from Marshall. The Eastern District of Texas's subpoena power will not assist the parties in litigating this case.

       3.      Transfer to the Northern District of Ohio Would Reduce the Cost for the Parties and Willing Witnesses.

The Northern District of Ohio would clearly be more convenient for the parties and their willing witnesses than would the Eastern District of Texas.  Flambeau's principal place of business is in Middlefield, Ohio.  (Bush Decl., ¶3.)  Jeff Bush, the Flambeau officer who is principally connected to the facts of this case, works in Flambeau's Middlefield offices.  (*Id.*, ¶2.)  Defendants also are partly located in Baraboo, Wisconsin (Dkt. #1, Complaint, ¶¶4, 6, 8), which is considerably closer to Cleveland, Ohio, than it is to Marshall, Texas (531 miles versus 1,018 miles).  Brooks & Baker's location, Pfafftown, North Carolina, also is considerably closer to the Cleveland than to Marshall (approximately 461 miles vs. approximately 966 miles).  No party is located near the Eastern District of Texas.  No person with information about the License Agreement, or with information about the design, manufacture, or distribution of lighted boxes pursuant to the License Agreement, resides in the State of Texas.  (Bush Decl., ¶18.)  Transfer to the Northern District of Ohio thus would be immeasurably more convenient for Defendants and their willing witnesses and, if anything, more convenient for Brooks & Baker as well.

**B.**      **The Public Interest Factors Weigh in Favor of Transfer**

       1.      The Northern District of Ohio Has a Greater Localized Interest in Deciding this Controversy.

"Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case."  *Vasudevan Software*, 2009 WL 3784371, at \*2 (citing *In re Volkswagen*, 545 F.3d at 318).  The Northern District of Ohio has a clear localized interest in deciding this controversy.  Flambeau has its principal place of business in Middlefield, Ohio, which lies within the Northern District of Ohio.  (Bush Decl., ¶3.)  Jeff Bush and Robert Hammil, the persons principally connected to the facts of

this case, both work out of Flambeau's Middlefield offices.  (*Id.*, ¶¶2, 5, 8-9.)  The substantial operative facts of the case thus occurred in the Northern District.

Moreover, the controversy between Flambeau and Brooks & Baker became further localized when it was decided by an Ohio state court sitting in Geauga County, Ohio, which lies within the Northern District of Ohio.  (Benkers Decl., ¶¶3-7, Exhs. A-E.)

In contrast, the Eastern District of Texas has no particular interest in the outcome of the case.  None of the underlying actions in this case occurred in the Eastern District of Texas.  No party is located in the Eastern District of Texas.  Flambeau made few shipments of the lighted boxes manufactured under the License Agreement into the State of Texas, constituting less than 1% of Flambeau's total sales of the lighted boxes.  (Bush Decl., ¶10.)

> 2.     The Northern District of Ohio is More Familiar with the Law that Will Govern this Case.

As explained above, Ohio law most likely governs Brooks & Baker's tort claim for unfair competition.  The Northern District of Ohio is more familiar with the law of Ohio than is the Eastern District of Texas.

Neither the Eastern District of Texas nor the Northern District of Ohio is more familiar with the federal law that governs Brooks & Baker's claims for patent infringement and false marking.  The two districts also are equally familiar with Wisconsin contract law, which governs the License Agreement between Brooks & Baker and Flambeau.

## CONCLUSION

For the reasons set forth, Defendants respectfully request that if it does not dismiss the Complaint, the Court (1) transfer venue of this case to the Western District of Wisconsin; or (2) in the alternative, transfer venue of this case to the Northern District of Ohio.

Dated: September 24th, 2010                    Respectfully submitted,


                                               /s/ Anthony A. Tomaselli
                                               Anthony A. Tomaselli, Wis. Bar No. 1003673
                                               (admitted in E.D. Tex.)
                                               Josephine K. Benkers, Wis. Bar No. 1030608
                                               (motion for admission in E.D. Tex. Pending)
                                               Quarles & Brady LLP
                                               33 East Main Street
                                               Suite 900
                                               Madison, WI  53703
                                               *Attorneys for Defendants*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that, on September 23, 2010, I conferred on behalf of Defendants with Trang Quoc Tran, one of the attorneys for Plaintiff, regarding the above motion to transfer venue and was unable to reach an agreement.  Thus this motion is opposed by Plaintiff.


*/s/  Josephine Benkers*
Josephine Benkers

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2010, I electronically filed Defendants' Motion to Transfer, the [Proposed] Orders granting Defendants' Motion to Transfer, and the Declarations of Josephine Benkers and Jeff Bush.

The CM/ECF system will send electronic notification of this filing to the following counsel of record who are CM/ECF Participants:

**Trang Quoc Tran** (TQT@tranlawllp.com)
Tran Law Firm
440 Louisiana
Suite 720
Houston, TX 77002

Dated:  September 24, 2010

_____/s/ *Anthony A. Tomaselli*_____

Anthony A. Tomaselli

QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, Wisconsin  53703
Telephone:  (608) 283-2491