**FILED**

IN COMMON PLEAS COURT
3:22 p.m

APR 20 2007

DENISE M. KAMINSKI
Clerk of Courts
Geauga County

**IN THE COURT OF COMMON PLEAS**
**GEAUGA COUNTY, OHIO**

FLAMEAUZING, INC.

Plaintiff/Counterdefendant

v.

BROOKS & BAKER, LLC.

&

BAKER INNOVATIONS, LLC

Defendants/Counterplaintiffs

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 07m000095

JUDGE DAVID L. FUHRY

**ANSWER TO THE COMPLAINT**
**AND COUNTERCLAIMS**

**JURY DEMAND**

Now come Defendants and Counterplaintiffs, BROOKS & BAKER, LLC AND

BAKER INNOVATIONS, LLC, by and through the undersigned counsel, and for their

Answer to the Complaint:

## ANSWER

1. Admit the allegations set forth in Paragraph Nos. 1 - 4 of the Complaint.

2. Deny the allegations set forth in Paragraph No. 5 of the Complaint.

3. Admit the allegations set forth in Paragraph Nos. 6 -10 of the Complaint.

## DEFENSES

FIRST DEFENSE: The Plaintiff fails to state a cause of action upon which relief can

be granted against these answering Defendants/Third Party Defendants

SECOND DEFENSE: The Complaint fails to join a necessary party, contrary to Ohio

Civil Rule 19.1.

THIRD DEFENSE: The claims set forth in the Complaint were improperly

commenced, venued, and/or served, and therefore this Honorable Court lacks jurisdiction

and/or venue over the person of this answering Defendant and/or the subject matter of the Complaint and Counterclaim.

FOURTH DEFENSE: The damages, if any, claimed by Plaintiffs were caused in whole or in part by Plaintiffs' own conduct, acts and/or omissions.

FIFTH DEFENSE: Plaintiffs fail to attach a copy of the written instrument upon which they rely in asserting claims herein, contrary to Ohio Civil Rule 10 (D).

SIXTH DEFENSE: This answering Defendants reserves the right to assert other defenses herein as discovery undertaken proves to be appropriate herein.

## COUNTERCLAIMS

Counterplaintiffs, for their Countercomplaint, allege as follows:

## THE PARTIES

4. Counterplaintiff Brooks & Baker, LLC, a Delaware limited liability company, is the owner of all rights to United States Patent No. 7,055,983, entitled "Tackle & Storage Box with Rotatable Light" issued June 6, 2006 to Penny Brooks and Todd C. Baker and assigned to Brooks & Baker, LLC.  This patent is herein referred to as "the '983 patent."

5. Todd C. Baker and Penny Brooks d/b/a Brooks and Baker, LLC jointly own all rights to United States Patent No. 6,267,484, entitled "Storage Box with Uniform Light Source" issued June 31, 2001 to Penny Brooks and Todd C. Baker. This patent is herein referred to as "the '484 patent."

6. Todd C. Baker d/b/a Baker Innovations, LLC, a North Carolina limited liability company, is the owner of all rights to United States Patent No. Des. 325,672, entitled "Combined Lighted Fishing Tackle and Tool Box" issued April 28, 1992 to Todd C. Baker. This patent is herein referred to as "the '672 patent."

7. Brooks & Baker, LLC is the successor-in-interest to Baker Innovations, LLC.

8. Flambeau, Inc. is a Wisconsin corporation with offices located at 15981 Valplast Road, Middlefield, Ohio 44062.

9. On April 12, 2004, Flambeau entered into an exclusive license agreement in which Flambeau was given, by Todd Baker d/b/a Baker Innovations, LLC, the exclusive right to make lighted tackle boxes under the '484 patent.

10. In the exclusive license agreement, Flambeau acknowledged "Baker is the inventor of the Licensed Patent" and that Flambeau's "manufacture, use and sale of such Product without a valid license from Baker would infringe the Licensed Patent."

11. In exchange for its exclusive right, Flambeau agreed that it would "immediately upon execution of this Agreement...use best efforts to manufacture and vigorously promote the marketing and sale of the Products."

12. In connection with the agreement, Flambeau also received an exclusive license to use Baker's "Night-Ranger" trademark in connection with the Products.  In exchange Flambeau agreed "not to take any action that is likely to harm the goodwill that Baker has acquired" in the Night-Ranger trademark or would otherwise tarnish the reputation of Baker or the "Night-Ranger" trademark.

13. The exclusive license agreement was worldwide in scope and Flambeau agreed to pay Baker 5% of all of its worldwide net sales as defined therein.

14. Flambeau was also given a right to grant sublicenses under the first exclusive license agreement, and in exchange for any sublicenses it granted it would pay Baker 50% of the gross income received from all such sublicenses.

15. Flambeau was to report and pay all monies due under the first exclusive license agreement to Baker within 45 days after the end of each calendar quarter. At the time of payment, Flambeau was to report "the number of Products sold for the preceding calendar quarter" and accompany such report with "appropriate supporting documents establishing the correctness of the stated figures in such report."

16. The exclusive license agreement was for five years unless terminated earlier under section 7 of the agreement in the event of the breach of the agreement or by Flambeau's cessation of business and/or bankruptcy. If earlier terminated, all royalties and payments were immediately due.

17. Flambeau further agreed that the "Products made and sold under this agreement shall be of a high quality" and that Flambeau would "manufacture and sell all Products in conformity with a sample ("Prototype") submitted by Flambeau that is approved by Baker." Flambeau agreed that "[s]uch Prototype shall be submitted by Flambeau to Baker prior to any manufacture or sale of Products by Flambeau or any of its Sublicensees." Flambeau further agreed that at least one each calendar year, Flambeau would provide Baker with three samples of the Product sold by Flambeau or its authorized Sublicensees together with their related Product Materials, cartons, containers, packing and wrapping material "for review by Baker."

18. Between the entry of the exclusive licensee agreement and the present, Flambeau has not made the full and complete quarterly disclosure of all its worldwide sales of lighted tackle boxes as required by the exclusive license agreement because by accurately stating its total actual worldwide sales.

19. Between the entry of the exclusive licensee agreement and the present, Flambeau has not made a full and complete quarterly disclosure of all its worldwide sales of lighted tackle boxes as required by the exclusive license agreement by providing the required documentation to accurately support its total worldwide sales of lighted tackle boxes.

20. Between the entry of the exclusive licensee agreement and the present, Flambeau has not made a full and complete quarterly disclosure of its total worldwide revenues from Sublicensees.

21. Between the entry of the exclusive licensee agreement and the present, Flambeau has not made a full and complete quarterly disclosure of supporting documentation to accurately document is total worldwide revenues from Sublicensees.

22. Between the entry of the exclusive licensee agreement and the present, Flambeau has not used its best efforts to market the Product to distributors.

23. Between the entry of the exclusive licensee agreement and the present, Flambeau has not used its best efforts to market the Product to Sublicensees.

24. Between the entry of the exclusive licensee agreement and the present, Flambeau has not protected the Night-Ranger trademark by selling inferior quality products under the mark.

25. Between the entry of the exclusive licensee agreement and the present, Flambeau has not protected the Night-Ranger trademark by selling competing products under a different mark.

26. Between the entry of the exclusive licensee agreement and the present, Flambeau has violated the quality control standards of the agreement by selling inferior quality products under the mark.

27. Between the entry of the exclusive licensee agreement and the present, Flambeau has also failed to annually submit the required samples under the agreement with the related packing and product materials for the products sold by Flambeau and its Sublicensees.

28. Flambeau may have breached the agreement in other ways yet to be discovered.

## COUNT I

## BREACH OF EXCLUSIVE LICENSE AGREEMENT

29. Flambeau has breached the exclusive licensee agreement for at least the reasons set forth in above allegations.

30. Baker Innovations, LLC, and its successor in interest to the exclusive license agreement, Brooks & Baker, LLC are entitled as a result of the breach to full compensatory damages, plus costs, attorney fees, pre and post judgment interest, and any all other relief to which they are entitled as a result thereof and which the Court deems just.  Such actual damages include lost profits measured at 5% of net worldwide sales had Flambeau not breached its best efforts requirement, all underreported sales, and all consequential damages from Baker not having entered into agreements with other parties to market and distribute the patented product.

## COUNT II

## PATENT INFRINGEMENT

Incorporate and re-allege in full their number 30 - 31 in Count One herein and above.

31. On June 6, 2006, United States Patent No. 7,055,983, entitled "Tackle & Storage Box with Rotatable Light" duly and legally issued to Penny Brooks and Todd C. Baker and was assigned to Brooks & Baker, LLC.  ("the '983 patent")

32. Brooks & Baker owns the '983 patent.

33. Flambeau, Inc. makes, sells, uses, imports, and/or offers for sale products throughout the United States and in this District that infringe the '983 patent including but not limited to products identified by Flambeau under the product numbers 6063TB, 6063TC, 6065TB, 6765HS and 7045PM.

34. Flambeau, Inc. will continue to make, use, import, sell or offer for sale within this District and within the United States, and import into the United States products covered by the '983 patent, without authority to do so, in violation of 35 U.S.C. §271, knowing such to be an infringement the '983 patent, and in willful disregard of the '983 patent rights, unless enjoined by this Court.

35. Flambeau further contributes to the infringement of the '983 patent and induces others to infringe the '983 patent by making, selling, using or offering for sale within this District and within the United States, and/or importing within the United States, products covered by the '983 patent in willful disregard of the '983 patent rights.

36. Flambeau, Inc. deliberately continues such acts in full view of the '983 patent rights, making this is an exceptional case within the meaning of 35 U.S.C. §285.

37. Brooks & Baker, LLC has suffered and continues to suffer damage by reason of Flambeau, Inc.'s manufacture, use, sale, import, or offer for sale of infringing products. Brooks & Baker, LLC has suffered and will continue to suffer irreparable harm and impairment of the value of its patent rights unless Flambeau is enjoined from continuing to willfully infringe the '983 patent.

## COUNT III

## BREACH OF TRUST & FIDUCIARY RELATIONSHIP

Incorporate and re-allege in full their number 30 - 38 in Counts One and Two herein and above.

38. In light of the above allegations, Baker Innovations, LLC, and its successor in interest to the exclusive license agreement, Brooks & Baker, LLC trusted Flambeau, Inc. to act in good faith for the benefit of both sides of the agreement. As a result of the exclusive rights that Flambeau, Inc. sought and obtained, Flambeau, Inc. placed itself in a fiduciary and/or special relationship of trust with regard to the Counterplaintiffs, which the Counterplaintiffs relied upon in the furtherance of their business.

39. Flambeau, Inc. violated its relationship of trust and/or fiduciary relationship by usurping Counterplaintiffs opportunities by replacing the Counter-plaintiffs' trademark on the product with Flambeau's trademarks and thereby usurping Counterplaintiffs' opportunity to generate goodwill as well as by its failure to promote and to account for sales of the Product.

40. Counter-plaintiffs are entitled as a result of the breach of that trust and/or fiduciary duties to full compensatory damages, plus costs, attorney fees, pre and post judgment interest, and any all other relief to which they are entitled as a result thereof and which the Court deems just. Such actual damages include damages for lost opportunities by not having entered into agreements with other parties to market and distribute the Product.

**PRAYER FOR RELIEF**

**WHEREFORE**, having fully answered, Defendants pray that the Complaint against them be dismissed, that they be permitted to go hence without costs and, further upon its Counterclaim as follows:

a.   Flambeau, Inc. is adjudicated and decreed to have infringed the '983 patent;

b.   Flambeau, Inc. its subsidiaries, divisions, affiliates, officers, agents, attorneys, and officers, and those acting in privity or concert with it, are enjoined from further infringement of the '983 patent, and from further contribution to or inducement of the infringement of the '983 patent;

c.   Flambeau, Inc. is ordered to account for damages adequate to fully compensate Brooks & Baker for the infringement of '983 patent;

d.   Such damages are trebled by the Court pursuant to 35 U.S.C. §284 by reason of the willful, wanton, and deliberate nature of the infringement;

e.   That this case be decreed an "exceptional case" and Brooks & Baker, LLC awarded reasonable attorney's fees by the Court pursuant to §35 U.S.C. §285;

f.   Costs are awarded to Brooks & Baker, LLC;

g.   Flambeau, Inc. is adjudicated and decreed to have breached its exclusive license agreements with Baker Innovations, LLC and its successor-in-interest, Brooks & Baker, LLC;

h.   Flambeau, Inc. is adjudicated and decreed to have had and breached a relationship of trust and/or fiduciary relationship arising from its exclusive license agreements with Baker Innovations, LLC and its successor-in-interest, Brooks & Baker, LLC;

i.      Baker Innovations, LLC and its successor-in-interest, Brooks & Baker, LLC
        are awarded all compensatory damages to which they are entitled from the
        breach of the exclusive license agreement and/or relationship of
        trust/fiduciary relationship including but not limited to past unpaid royalties
        on actual worldwide sales by Flambeau, Inc., and lost profits on sales that
        should have  been made had Flambeau not violated its best efforts
        requirements, and ;

j.      Brooks & Baker are awarded pre-judgment and post-judgment interest, costs,
        and attorney fees.

k.      That the Court award punitive damages for Flambeaus conduct and provide
        Baker Innovations, LLC and its successor-in-interest, Brooks & Baker, LLC
        any and all further relief that is just and fair under the circumstances.


                                Respectfully submitted,


                                David A. McGee, Esq. (0001267)
                                SVETE & McGEE CO., L.P.A.
                                Counsel for Defendants/
                                Counterplaintiffs
                                100 Parker Court
                                Chardon, Ohio 44024
                                (440) 286-9571

## PROOF OF SERVICE

A copy of the foregoing Answer to Complaint and Counterclaims has been forwarded by ordinary U.S. Mail, postpaid, to Todd C. Hicks, Esq., Thrasher, Dinsmore & Dolan, 100 7th Avenue, Suite 150, Chardon, Ohio 44024 on this ___12th___ day of April, 2007.

David A. McGee, Esq. #0001267