**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BROOKS & BAKER, L.L.C., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:10-cv-146-TJW-CE |
| | § | |
| FLAMBEAU, INC., ET AL. | § | |
|     Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Defendants' motion to dismiss (Dkt. No. 11) and motion to transfer venue (Dkt. No. 15). Defendants argue that Plaintiff's complaint should be dismissed for: (1) improper service pursuant to FED. R. CIV. P. 12(b)(5); or (2) lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). In the alternative, Defendants argue that this case should be transferred to either the Western District of Wisconsin or the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court GRANTS Defendants' motion to transfer this case to the Northern District of Ohio and transfers this case pursuant to 28 U.S.C. § 1406(a). The court, therefore, DENIES Defendants' motion to dismiss for lack of personal jurisdiction.

**I.      FACTUAL BACKGROUND**

Plaintiff Brooks & Baker, LLC ("Plaintiff") filed suit against defendants Flambeau, Inc. ("Flambeau"), Nordic Group of Companies, Ltd. ("Nordic"), William Sauey, and Jason Sauey (collectively, "Defendants"), alleging infringement of U.S. Patent No. 7,055,983 (the "'983 Patent"), false patent marking, trademark infringement, breach of contract, common law unfair competition, and conspiracy. This dispute arises out of a license agreement (the "Agreement")

1

between Plaintiff and Flambeau, which grants Flambeau an exclusive five-year right to sell lighted fishing, utility, tool, and medical storage boxes under Plaintiff's patents. It also grants Flambeau the right to use Plaintiff's trademarks in the marketing of the boxes. The Agreement has a choice-of-law provision stating that it is governed by the law of Wisconsin. Defendants Nordic, William Sauey, and Jason Sauey are not parties to the Agreement.

Defendant Flambeau is a Wisconsin corporation with its principal place of business in Ohio. Flambeau also has manufacturing facilities in Wisconsin, Indiana, Georgia, Ohio, California, North Carolina, England, and Mexico. Defendant Nordic is a Wisconsin corporation with its principal place of business in Wisconsin. Nordic is a holding company for Flambeau and numerous other subsidiaries. Defendant William Sauey is the chairman of Nordic's board, the founder and former president of Flambeau, and the registered agent of both corporations. He conducts business in Wisconsin. Defendant Jason Sauey is a director and officer of both Nordic and Flambeau and he conducts business in Wisconsin, as well as Ohio.

## II.    RULE 12(b)(5) MOTION TO DISMISS

Defendants' motion to dismiss first argues that Plaintiff's complaint should be dismissed for untimely service under Rule 12(b))(5). Courts must extend the time for service of process under Rule 4(m) if a plaintiff shows good cause for its failure to serve the defendant within the requisite period of time. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("If good cause is present, the district court must extend time for service."). Having carefully reviewed the parties' arguments, the court concludes that good cause exists for Plaintiff's failure to timely serve Defendants. As such, the court DENIES Defendants' motion to dismiss pursuant to Rule 4(m).

### III. RULE 12(B)(2) MOTION TO DISMISS

Defendants' motion to dismiss next argues that this court lacks personal jurisdiction over all of the Defendants. With regard to Flambeau, Defendants argue that the sale of a few of the allegedly infringing products in Texas does not establish that this court has general or specific jurisdiction. Defendants further argue that, even if Plaintiff can establish personal jurisdiction over Flambeau, Plaintiff cannot prove personal jurisdiction over Nordic and the Saueys because Flambeau is not the alter ego of either Nordic or the Saueys.

### A. LEGAL STANDARD

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Jurisdiction may be general or specific. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id*. at 414. "Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care*, 438 F.3d at 469 (quoting *id*. at 414). In this case, Plaintiff does not contend that general jurisdiction exists and, therefore, this case presents only the question of specific jurisdiction.

"A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has 'minimum contacts' with the forum state such that imposing a

judgment would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316.). In the Fifth Circuit, the specific jurisdiction inquiry requires the court to engage in the following three-step analysis: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 378 (quoting *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)). The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, but Texas's "long-arm" statute extends jurisdiction to the constitutional limit, so the two inquiries in this case fold into one. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

A defendant establishes minimum contacts with a state if "the defendant's conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). There must be some act whereby the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475. This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Id.* "Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." *Nuovo Pignone*, 310 F.3d at 379 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

4

**B. APPLICATION**

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id*. The court must resolve all undisputed facts, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id*.

**a. Flambeau**

As discussed above, to determine whether Flambeau has "minimum contacts" with Texas, the court must identify some act whereby it "purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Under Fifth Circuit law, "placing a product into the stream of commerce, at least where the defendant knows the product will ultimately reach the forum state, … rise[s] to the level of "purposeful availment." *Luv N' care*, 438 F.3d at 470. The Fifth Circuit "has consistently held that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Id*. (quoting *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 111 (1987)); *see also Silver Dream, LLC v. Yousuf Intern., Inc.*, Civil Action No. 10–4247, 2011 WL 3268347, at *3 (E.D. La. July 28, 2011). "Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv N' care*, 438 F.3d at 470.

Here, the court concludes that Plaintiff has made a prima facie showing that this court has

personal jurisdiction over Flambeau. The Agreement that Flambeau and Plaintiffs entered into grants Flambeau an exclusive right "to manufacture, import, offer to sell, and sell the Products in the Territory." Ex. 2 at 1, attached to Dkt. No. 1. The license agreement defines "the Territory" as "the entire world." Flambeau agreed to it would "use its best efforts to manufacture and vigorously promote the marketing and sale of the Products" and Flambeau admits that its advertising of the lighted tackle boxes to consumers via the Internet and its catalogs was intended to reach a market coving the entire United States. *Id*. at 1, 3; *see also* Ex. 1 at 13, attached to Dkt. No. 37. Furthermore, Plaintiff attests that Flambeau convinced the national distributor, Wal-Mart, to sell the lighted tackle boxes. Considering these facts, it should have been eminently foreseeable to Flambeau that its products would reach Texas. In fact, Plaintiff attests that, at some point in time, Wal-Mart's website indicated that the lighted tackle box was available at a Wal-Mart store in the Dallas / Fort Worth area. Indeed, Flambeau even admits that it made numerous direct shipments of the products manufactured under the Agreement into Texas. As such, applying the more relaxed mere foreseeability test to the facts of this case, the court concludes that Flambeau's contacts with Texas are sufficient to withstand constitutional scrutiny. *See Luv N' care*, 438 F.3d at 470.

Furthermore, the court concludes that this case is distinguishable from the controlling opinion[1] of the Supreme Court in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2792 (June 27, 2011). In that case, Justice Beyer, writing for the concurrence, explained that no Supreme Court precedent has concluded that "a single isolated sale" is sufficient to support jurisdiction. He went on to conclude that:

---

[1] *Tennard v. Dretke*, 542 U.S. 274, 286 n* (2004)

the relevant facts found by the New Jersey Supreme Court show no "regular ... flow" or "regular course" of sales in New Jersey; and there is no "something more," such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British Manufacturer "purposefully avail[ed] itself of the privilege of conducting activities" within New Jersey, or that it delivered its goods in the stream of commerce "with the expectation that they will be purchased" by New Jersey users.

*Id*. at 2792 (internal quotation marks omitted). Here, Flambeau has admitted that it inserted the accused products into the stream of commerce with the intention that the products reach a national market – that is, Flambeau intended Texas consumers to purchase the products at issue in this lawsuit. Furthermore, the evidence shows that Flambeau made many more than just one isolated sale to Texas. As such, unlike the circumstances in *McIntyre*, Flambeau purposefully availed itself of the privilege of conducting business in Texas.

It is not enough to satisfy due process that Flambeau has some "minimum contacts" with Texas. Rather, the underlying cause of action must "arise out of" those contacts. Here, Plaintiff's complaint alleges causes of action for false patent marking, trademark infringement, breach of contract, common law unfair competition, and conspiracy. Each of these claims arise out of the Agreement, which granted Flambeau the exclusive right to sell the lighted tackles boxes in Texas. Considering that Flambeau admits that it sold these boxes in Texas, the court concludes that the underlying causes of action "arise out of" Flambeau's contacts with Texas.

In conclusion, considering that Flambeau does not dispute that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, the court concludes that it has personal jurisdiction over Flambeau. Accordingly, the motion to dismiss for lack of personal jurisdiction with regard to Flambeau is denied.

### b. Nordic Group

Plaintiff argues that this court has personal jurisdiction over Nordic because Nordic is an alter ego of Flambeau. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Under Fifth Circuit law, however, "it has long been recognized … that in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through the local activities of its subsidiaries. *Id*. (collecting authority). "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Id*. (internal quotations omitted).

In *Hargrave*, the Fifth Circuit set out the following factors to be considered in deciding whether a parent company can be held amendable to personal jurisdiction because of the acts of a subsidiary: (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations. *Id*. at 1160. The court also explained that:

> 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for

jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.

*Id*. at 1160-61 (internal citations omitted).

Here, Plaintiff has failed to establish that Nordic is merely the alter ego of Flambeau. Although Nordic owns 100% of Flambeau's stock and the two companies have a few officers and directors in common, there is no actual evidence[2] that Nordic exercises any control over Flambeau's general policy or its daily operation. Furthermore, the evidence establishes that Nordic and Flambeau have separate headquarters and separate accounting systems and that they observe corporate formalities, compile separate financial statements, and conduct separate board meetings. In addition, from 2004 through the present, half or more of Flambeau's directors and many of its officers have been independent of Nordic. Considering the evidence as a whole, the court concludes that Nordic is not the alter ego of Flambeau. Accordingly, the court grants Defendants' motion to dismiss for lack of personal jurisdiction with regard to defendant Nordic.

### c. William and Jason Sauey

Plaintiff argues that the court has personal jurisdiction over William and Jason Sauey because they are the alter ego of Flambeau. In response, the Saueys rely on the fiduciary shield doctrine to argue that they lack the requisite minimum contacts with Texas. This doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has *in personam* jurisdiction over the corporation ...." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The doctrine is

---

[2]     Plaintiff argues that since Nordic owns 100% of Flambeau and currently has cash reserves of less than $1,200.00, Nordic must exist for the sole purpose of managing Flambeau. This argument, however, ignores the fact that Nordic serves as a holding company for numerous subsidiaries. It also disregards the legal standard requiring control *greater* than that normally associated with 100% ownership. *See Hargrave*, 710 F.2d at 1159.

justified on the basis that "'it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Saktides v. Cooper*, 742 F.Supp. 382, 385 (W.D. Tex. 1990) (quoting *Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). Courts, however, have recognized an exception to the general rule that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation. *See Spademan*, 772 F.2d at 1197; *St. Claire v. EnsureLink*, No. CIV.A.3:01CV1548–G, 2002 WL 663570, at *3 (N.D. Tex. April 19, 2002); *Saktides*, 742 F. Supp. at 386. This exception applies when the corporation is the alter ego of the defendants. *See, e.g., St. Claire*, 2002 WL 663570, at *3; *Spademan*, 772 F.2d at 1197. In determining whether a corporation is the alter ego of the defendants, the court will consider whether the corporation (1) is undercapitalized, (2) keeps separate books, (3) commingles its finances with individual finances, (4) is used to promote fraud or illegality, (5) fails to observe corporate formalities, and (6) is merely a sham. *Spademan*, 772 F.2d at 1197.

Here, after taking the opportunity to conduct jurisdictional discovery, Plaintiff has failed to produce any evidence relevant to the factors listed above. To show that a corporation is an alter ego of an individual, however, a plaintiff must "clearly allege specific facts" showing that the corporation is a mere façade for the individual's activities. *See, e.g., St. Claire*, 2002 WL 663570, at *3 (finding that the plaintiff had "failed to clearly allege specific facts indicating that EnsureLink is but a facade for the individual defendants' activities" and therefore concluding that plaintiff's "conclusory allegations …[were]… insufficient to overcome the fiduciary shield doctrine."). As such, the court concludes that William and Jason Sauey are protected by the fiduciary shield doctrine and, therefore, are not subject to this court's personal jurisdiction.

Defendants' motion to dismiss for lack of personal jurisdiction with regard to the Saueys is thus granted.

## IV.     SECTION 1406(a)

Despite lacking personal jurisdiction over defendants Nordic, William Sauey, and Jason Sauey, the court concludes that, in the interest of justice, this case should be transferred to the Northern District of Ohio.   Section 1406(a) "permits a court to transfer a case 'to any district or division in which it could have been brought' regardless [of] whether it has personal jurisdiction over the defendants."   *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (citing 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).   In their motion to transfer venue, Defendants argue that Plaintiff could have originally filed this lawsuit in the Northern District of Ohio, and Plaintiff does not dispute this contention.   *See* Dkt. No. 22 at 24.   Furthermore, having carefully examined the § 1404(a) *forum non conveniens* factors, the court concludes that the Northern District of Ohio is the most convenient forum in which to litigate the parties' dispute.   Accordingly, the court transfers this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1406(a).

## V.     CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to transfer this case to the Northern District of Ohio and transfers this case pursuant to 28 U.S.C. § 1406(a) (Dkt. No. 15). The court, therefore, DENIES Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. No. 11).

SIGNED this 30th day of September, 2011.


_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE